IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CLINTON J. REED,

        Plaintiff,

v.                                        CIVIL ACTION NO. 3:15-12605

CARRIER ENTERPRISE, LLC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Carrier Enterprise, LLC's ("Carrier") Motion to Dismiss. ECF No. 3. For the reasons set forth below, Defendant's Motion is **GRANTED**. The Court recognizes that the date to amend pleadings, pursuant to the scheduling order entered in this case on October 8, 2015 (ECF No. 10), has passed. If Plaintiff wishes to amend his Complaint to cure the deficiencies indicated infra, Plaintiff must request leave of the Court to do so on or before March 11, 2016.

**I.    Background**

Plaintiff Clinton Reed commenced this civil action by filing a Complaint on July 10, 2015 against Carrier Enterprise, LLC in the Circuit Court of Putman County, West Virginia. Defendant removed this action to federal court on the basis of diversity jurisdiction. In his Complaint, Plaintiff alleges that he was terminated from his employment with Carrier Enterprise on September 6, 2013, in retaliation for advising his supervisor that he had joined the U.S. Army National Guard and indicating that he intended to inform Carrier's customers of its illegal/fraudulent billing practices. The Complaint contains three causes of action – Count 1: wrongful discharge/termination; Count

2: intentional infliction of emotional distress and/or outrage; Count 3: breach of contract. Defendant moves to dismiss Counts 2 and 3 at this juncture.

## II. Standard of Review

To overcome a motion to dismiss under Rule 12(b)(6), a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id.* (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotation marks and citations omitted). Finally, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. Discussion

A. <u>Count 2: Intentional Infliction of Emotional Distress and/or Outrage</u>

The tort of intentional infliction of emotional distress ("IIED"), also known in West Virginia as the tort of outrage, arises when "one who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another," and therefore "is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1978). In order to prevail on an IIED claim under West Virginia law, a plaintiff must prove the following elements:

> (1) That the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

Here, Plaintiff's Complaint is devoid of any factual allegations from which a claim for IIED could be reasonably inferred. The only factual allegations regarding Plaintiff's discharge is that it occurred on September 6, 2013, after Plaintiff had both informed his supervisor that he had entered the U.S. National Guard and advised him that he intended to inform customers of Defendant's fraudulent billing practices. Plaintiff contends that he "has been caused to suffer and sustain intentional or reckless infliction of emotional distress through the intimidating, callous, and retaliatory slanderous conduct of the defendant, Carrier, through the act of employees and/or agents of the defendant, Carrier." *Compl.*, ECF No. 1, Ex. 1, ¶ 25. This statement, however, contains only "labels and conclusions" and does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Plaintiff cites no specific behavior or instances of slanderous conduct that could provide the basis for his IIED claim. Furthermore, other than these allegations and statements indicated above, the remaining paragraphs in Count 2 of the

Complaint provide nothing more than a formulaic recitation of elements. ECF No. 1, Ex. 1, ¶¶ 26–30.

Additionally, as Defendant points out, the Supreme Court of Appeals of West Virginia has held, with regards to claims for IIED in the context of employment cases, that:

> [T]he prevailing rules in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge – e.g., the embarrassment and financial loss stemming from the plaintiff's firing – rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotion distress can attach. When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

*Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219, 226 (W. Va. 1994). As such, Plaintiff must establish that the employer's <u>conduct in effectuating his discharge</u> was "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," not simply that the Plaintiff was "maliciously" terminated. In other words, wrongful or malicious termination, in and of itself, does not form the basis of an IIED claim unless Defendant's conduct in effectuating the discharge rises to such an intolerable level. Plaintiff has not alleged any facts illustrative of such outrageous behavior.

As such, Plaintiff's allegations on the face of the Complaint are devoid of factual allegations necessary to support his claim and contain only a formulaic recitation of the elements. Additionally, Plaintiff's Response fails to illuminate any specific conduct of the Defendant and merely instructs the Court to review the Complaint. *Pl.'s Resp. to Def.'s Mot. to Dismiss*, ECF No. 8, at 3. This is insufficient and Plaintiff fails to state a claim that survives a motion to dismiss. Therefore, Defendant's Motion to Dismiss is GRANTED with respect to Count 2.

B. Count 3: Breach of Contract

Under West Virginia law, in order to state a breach of contract claim, a plaintiff must show, "the existence of a valid, enforceable contract; that the plaintiff had performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." *Kennedy v. BAC Home Loans Servicing, LP*, No. 3:13-11401, 2013 WL 5274365, at *6 (S.D.W. Va. September 18, 2013). Here, Plaintiff's breach of contract claim is premised on alleged terms and conditions set forth in the Personnel Guidelines for Employed Staff which was provided to him by the Defendant. Specifically Plaintiff states:

> 32. Upon being hired by the Defendant, Carrier, the Plaintiff was provided a copy of the Personnel Guidelines for Employed Staff by the Defendant, Carrier.
>
> 33. Said guidelines set the terms and conditions of the employment relationship between the Defendant Carrier, and the Plaintiff.
>
> 34. The Defendant, Carrier, violated the terms and conditions of the employment of the Plaintiff as set forth herein and in such other ways as shall become more evident through discovery resulting in the illegal termination of the Plaintiff on September 6, 2013.

*Compl.*, ECF No. 1, Ex. 1, ¶¶ 32–34. Although Plaintiff references the Personnel Guidelines, Plaintiff does not cite a particular section of the Guidelines, nor does he point to particular language within the Guidelines, where he claims the alleged terms and conditions of employment were set. In other words, as will be discussed below, Plaintiff fails to point to the existence of a valid, enforceable contract.

In West Virginia, "employees and employers alike are generally governed by the at-will employment doctrine." *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 717 (W. Va. 2001). This generally means that "an at-will employee serves at the will and pleasure of his or her employer and can be discharged at any time, with or without cause. *Id.* at 718. This general at-will doctrine has been subsequently modified to address the issue of employee handbooks and whether language

contained within handbooks can alter the at-will nature of employment. First, in *Cook v. Heck's, Inc.*, 342 S.E.2d 453 (W. Va. 1986) the Supreme Court of West Virginia held "that a provision in an employee handbook may alter the at-will nature of an employment relationship if there is a definite promise in the handbook by the employer not to discharge the covered employee except for specified reasons." *Bine v. Owens*, 542 S.E.2d 842, 845 (W. Va. 2000) (citing *Cook*, 342 S.E.2d at 459). Specifically, the *Cook* Court stated:

> The inclusion in the handbook of specified discipline for violations of particular rules accompanied by the statement that the disciplinary rules constitute a complete list is prima facie evidence of an offer for a unilateral contract of employment modifying the right of the employer to discharge without cause.

*Cook*, 342 S.E.2d at 459.

This holding, however, was subsequently modified by *Suter v. Harsco Corporation*, 403 S.E.2d 751, 752 (W. Va. 1991), where, although the Court reiterated the principle that a handbook provision may alter an at-will relationship, it stated further that "[a]n employer may protect itself from being bound by statements made in an employee handbook by having each prospective employee acknowledge in his employment application that the employment is for no definite period and by providing in the employment handbook that the handbook's provision are not exclusive." *Id.* at Syl. 4. Additionally, the *Suter* Court noted "[a]n employer may protect itself from being bound by any and all statements in an employee handbook by placing a clear and prominent disclaimer to that effect in the handbook itself." *Id.* at Syl. 5.

Here, Plaintiff's claim fails because he has not alleged facts that Carrier's Personnel Guidelines contained any definite promises sufficient to create a contract of employment. He only states that the Guidelines "set terms and conditions" of his employment relationship with Carrier. Plaintiff did not attached a copy of the Personnel Guidelines to his Complaint, nor did he reference particular language or cite specific sections that allegedly altered his at-will relationship with

Carrier. As such, Plaintiff's allegations in his Complaint are no more than "legal conclusion[s] couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Plaintiff's claim fails because, as Defendant pointed out, Carrier's Personnel Guidelines contain two disclaimers that state that Plaintiff's employment was at-will and that the Guidelines are not a contract.[1] First, in the introduction to Carrier's Personnel Guidelines, it states:

> The subjects discussed within this handbook apply only to Carrier Enterprise, LLC employees. **This handbook is not intended as a Legal document or an employment contract.** The handbook provides an overview of most Carrier policies, practices and benefits. For a full description of policies, please refer to the Carrier Enterprise intranet or contact your local Human Resources Department. Circumstances may require that policies, practices and benefits described in the handbook be changed; consequently, Carrier Enterprise reserves the right to amend, supplement or rescind any provisions or policies at its sole and absolute discretion, with or without notice, with the exception of the at-will policy. As policies and benefits are revised, material updates will be distributed to you.

*Def.'s Mot. to Dismiss*, ECF No. 3, Ex. 1. Second, Plaintiff signed an Employee Acknowledgement form on June 6, 2012, upon receipt of the Personnel Guidelines, which states:

> This employee handbook describes important information about Carrier enterprises, LLC, and I understand that I should consult my Supervisor or Human Resources regarding any questions not answered in the handbook. **I have entered into my employment relationship with Carrier Enterprise, LLC voluntarily and acknowledge that there is no specified length of employment. I understand that I am an at-will employee. Accordingly, either I or Carrier Enterprise, LLC can terminate the relationship at will, with or without cause, at any time, so long as there is no violation of applicable federal or state law.** I understand

---

[1] The Court may consider excerpts of Defendant's Personnel Guidelines because "[w]ithout converting a motion to dismiss into a motion for summary judgment, a court may consider documents that are attached to the complaint," as well as "documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D.W. Va. 2014) (quoting *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009)). "When a document is properly considered in the context of a motion to dismiss and it conflicts with the bare allegations of the complaint, the document prevails." *Id*. Here, although not attached to Plaintiff's Complaint, Defendant's Personnel Guidelines are integral to and explicitly relied on in Plaintiff's Complaint as the basis for his breach of contract claim. As such, the Court may consider these documents, as provided by Defendant, without converting this motion to dismiss into a motion for summary judgment.

> that I must comply with the policies outlined in this Handbook as well as all Company policies. Failure to comply with such policies may lead to disciplinary action, up to and including termination.
>
> The information, policies and benefits described here may be subject to change. I acknowledge that revisions to the handbook may occur, except to Carrier Enterprise LLC's policy of employment-at-will. All such changes will be communicated through official notices and I understand that revised information may supersede, modify, or eliminate existing policies.
>
> **Furthermore, I acknowledge that this handbook is neither a contract of employment or a legal document.** I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it.

*Def.'s Mot. to Dismiss*, ECF No. 3, Ex. 2. These statements are clear disclaimers indicating to Plaintiff that his employment is not guaranteed for any specified period of time and that the Guidelines are not meant to be construed as altering the general at-will employment doctrine.[2]

Additionally, the Court also notes that Plaintiff responded to this allegation very briefly, noting only that:

> The copy of the handbook that plaintiff's counsel was able to access consisted only of the Cover or Title page, the Introduction, and the Employee Acknowledgement Form signed by the plaintiff. The body of the exhibit was completely missing. Therefore, there is no real way to address whether the handbook actually does or does not, constitute the basis for a contract as alleged by plaintiff in his complaint.

*Pl.'s Resp. to Def.'s Mot. to Dismiss*, ECF No. 8, at 3–4. This response again fails to cite or reference any language or specific section in the Personnel Guidelines which modified the at-will nature of Plaintiff's employment and could therefore form the basis of Plaintiff's breach of contract

---

[2] Similarly, in *Suter*, the employee handbook contained a disclaimer stating: "I UNDERSTAND AND AGREE THAT, IF HIRED, MY EMPLOYMENT IS FOR NO DEFINITE PERIOD AND MAY, REGARDLESS OF THE DATE OF PAYMENT OF MY WAGES AND SALARY, BE TERMINATED AT ANY TIME WITHOUT ANY PRIOR NOTICE." *Suter,* 403 S.E.2d at 753. On appeal, the Court in *Suter* reversed the trial court and held that the employee handbook did not modify the at-will nature of plaintiff's employment because of the abovementioned disclaimer provided to the plaintiff in her application for employment. *Id.*

claim. As such, Plaintiff's Complaint does not "raise a right to relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)

For this reason and because Defendant's Personnel Guidelines clearly contain language that "protect [Carrier] from being bound by any and all statements in an employee handbook,"[3] Defendant's Motion to Dismiss Count 3 of the Complaint is GRANTED.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 3) is **GRANTED**. The Court recognizes that the date to amend pleadings, pursuant to the scheduling order entered in this case on October 8, 2015 (ECF No. 10), has passed. If Plaintiff wishes to amend his Complaint to cure the deficiencies indicated supra, Plaintiff must request leave of the Court to do so **on or before March 11, 2016**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 26, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE

---

[3] *Suter*, 403 S.E.2d at Syl. 4.